UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WARREN MAYNARD, | : | |
| | : | |
| Petitioner, | : | Civil Action No.: 04-1470 (RMU) |
| | : | |
| | : | Document No.:   4 |
| v. | : | |
| | : | |
| UNITED STATES PAROLE COMMISSION *et al.*, | : | |
| | : | |
| Respondents. | : | |
| | : | |

MEMORANDUM OPINION

DENYING THE PETITIONER'S APPLICATION FOR A WRIT OF *HABEAS CORPUS*

I.  INTRODUCTION

Before the court is the *pro se* petitioner's application for a writ of *habeas corpus* brought pursuant to 28 U.S.C. § 2241.  The petitioner challenges the United States Parole Commission's parole revocation decisions.  Because the decisions were adequately supported, the court denies the petitioner's application for a writ of *habeas corpus*.

II.  BACKGROUND

In April 1995, the Superior Court of the District of Columbia sentenced the petitioner to two to six years' imprisonment for attempted distribution of cocaine.  United States Parole Commission's Opp'n to Pet. for Writ of Habeas Corpus ("Resp't's Opp'n") at 1.  The petitioner was released to parole in April 1998 with a full-term release date of April 11, 2001.  *Id.*  The District of Columbia Board of Parole issued a parole violator warrant on December 23, 1998,

which was executed on July 22, 2000. *Id*. The petitioner remained in custody awaiting a parole revocation hearing for 102 days. *Id*. at 2. The revocation hearing never occurred. *Id.* Instead, on November 1, 2000, the United States Parole Commission (the "Commission") ordered the petitioner's release to parole pursuant to D.C. Code § 24-131, an emergency law enacted to reduce the backlog of revocation cases in the District of Columbia.[1] *Id*. The Commission issued a notice of action, which was sent to the District's Central Detention Facility "for delivery to the petitioner." *Id*. The notice directed the petitioner to report to his Community Supervision Officer immediately upon release. *Id*. It is unclear whether the petitioner received this notice. *Id.*; Pet. for Writ of Habeas Corpus ("Pet.") at 3. The petitioner was released from custody on November 3, 2000. The petitioner was "given a yellow copy of release paper with no instructions to whom or where to report . . ." Pet. at 3.

By letter of December 21, 2000, the petitioner's parole officer notified the Commission that the petitioner had failed to report and that efforts to contact the petitioner were unsuccessful. Resp't's Opp'n at 2. As a result, the Commission issued a warrant on December 22, 2000, charging the petitioner with failing to report "on or about November 2, 2000." *Id*. The warrant was executed on May 29, 2001. *Id*. at 3. At his preliminary interview where he was represented by counsel, the petitioner denied the charge. *Id.*; Resp't's Opp'n, Ex. 12 (summary report). He asserted that he was not able to report on November 2 because he was not released from custody until November 3, 2000. The petitioner also asserted that upon his release, he did not receive

---

[1] Effective August 5, 1998, the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act") abolished the D.C. Board of Parole and transferred parole responsibility for District of Columbia prisoners to the United States Parole Commission. D.C. Code § 24-131 (2001); *Franklin v. Dist. of Columbia*, 163 F.3d 625, 632-33 (D.C. Cir. 1998). The final transfer of authority occurred on August 5, 2000.

instructions about reporting for supervision and therefore "assumed that he was not supposed to report," Resp't's Opp'n, Ex. 12 at 2, and that "the letter that was sent to him at home was sent to the wrong apartment number and he did not receive any letter." *Id*. At his parole revocation hearing on July 25, 2001, the petitioner reiterated his claims and added that when "he asked the US Marshals" about his reporting obligations, "a Marshal told him not to worry about it." Resp't's Opp'n, Ex. 13 (revocation hearing summary) at 2. The hearing examiner found that the petitioner had committed the violation of not reporting as directed but also found the "violation . . . not sufficient for revocation." *Id*. at 4. The examiner recommended that the petitioner be released from custody, his parole terminated, and his case closed "due to the full time date of 4/11/2001, nunc pro tunc." *Id*. The executive reviewer disagreed and recommended that the petitioner's parole be revoked. He considered "the lack of clarity as to reporting instructions" to be a mitigating factor in resentencing the petitioner below the guideline range of 12-16 months' incarceration. *Id*. at 5. On August 15, 2001, the Commission, adopting the executive reviewer's recommendation, revoked the petitioner's parole, sentenced him to eight months' incarceration, and forfeited the time spent on parole. Resp't's Opp'n, Ex. 15. It credited the petitioner's sentence for the 102 days he spent in custody between July and November of 2000 while awaiting his parole revocation hearing. *Id*.

On January 29, 2002, the petitioner was released on parole, with a full-term date of May 17, 2004 (later recalculated to be February 14, 2004). Resp't's Opp'n at 4. By notice of February 4, 2003, the petitioner once again was charged with parole violations, namely, failing to abstain from alcohol and illicit drugs, failing to submit to drug testing, and "violating the special drug inpatient treatment condition." *Id*. The Commission issued a warrant on February 10,

2003, which was not executed until April 29, 2004.  *Id*.

At his revocation hearing in June 2004, the petitioner admitted the charges but asserted that had he received "good time" credit for the 102 days spent in custody in 2000, his sentence would have expired before the commission of the underlying violations.  *Id*.  According to the petitioner "[m]y time should have expired in 2000 then I wouldn't be here [in custody] today."  Petition at 4.  In recommending revocation, the hearing examiner noted that "[the petitioner] believes that the computation is wrong because he did not receive any credit for good time . . . This examiner was not clear on subject's concerns regarding the sentence computation and advised subject to seek clarification of the sentence computation from the Federal Bureau of Prisons."  Resp't's Opp'n, Ex. 22.  The Commission revoked the petitioner's parole on July 19, 2004, advised the Bureau of Prisons to apply 102 days' credit to the petitioner's sentence, and set a new full-term release date of May 1, 2006.  Resp't's Opp'n at 5; Resp't's Opp'n, Ex. 23.

### III.  ANALYSIS

The writ of *habeas corpus* may extend to a District of Columbia prisoner when it is shown that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

#### A.  The Petitioner Fails to Demonstrate Entitlement to "Good-Time" Credit

The petitioner claims that had he received 102 days of "good time" credit, apparently in addition to the 102 days' credit he did receive, his sentence would have expired before his commission of the behavior supporting the revocation.  District of Columbia law provides that

> [i]f the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence.

D.C. Code § 24-406(a). Good-time credits are applied to the minimum term of the sentence being served to reduce the time of eligibility for release to parole and to the maximum term to determine the mandatory parole release date. D.C. Code § 24-221.01a(b). They do not carry over into a new sentence. *Teachey v. Carber*, 736 A.2d 998, 1006, n.12 (D.C. 1999); *cf.* 28 C.F.R. § 2.35(b) ("once . . . [a federal] offender is conditionally released . . . the good time earned during that period of imprisonment is of no further effect . . . [to shorten his supervision or remaining sentence]"). To the extent that the petitioner earned good-time credit for the 102 days he spent awaiting the parole revocation hearing, that credit was applied to reduce the sentence imposed following his 2001 revocation from a full-term date of May 17, 2004, to a mandatory release date of October 17, 2003. Gov't Opp. at 7. The petitioner was properly credited for 102 days' of actual time spent in custody. He is not entitled to any additional credit.

### B. The Commission's Parole Decision is Adequately Supported

In the context of a parole revocation hearing, a parolee has a Fifth Amendment liberty interest in maintaining his "conditional" freedom and therefore is entitled to due process. *Ellis v. Dist. of Columbia,* 84 F.3d 1413, 1420 (D.C. Cir. 1996) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). That entitlement, however, is limited to notice and an opportunity to be heard in a reasonably timely manner. *Id.* at 1421-24 (discussing *Morrissey* standards).

The gravamen of this claim is that the Commission improperly revoked the petitioner

based on his failure to report to his parole supervisor on November 2, 2000 because he was still incarcerated. The petitioner also asserts that revocation was improper because of the questions surrounding his notice of the reporting requirements. The Commission considered the petitioner's explanations and, in fact, identified the notice discrepancy as a mitigating factor in departing downward from the guidelines. It reasonably determined from the petitioner's admissions, including his receipt of the written notice showing his release to parole, that the petitioner knew or should have known that he had not completed his sentence and was subject to supervision. *See* Resp't's Opp'n, Ex. 14, box # 6 ("reinstated to parole"); *cf.* Petition at 3 (admitting receipt of a "yellow copy of release paper").

     As a general rule, "[t]he courts are without power to grant [] parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations." *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1979) (quoting *Brest v. Ciccone*, 371 F.2d 981, 982-83 (8th Cir. 1967)). Absent a constitutional violation, this court is not authorized under § 2241 to disturb the Commission's parole decisions. *See, e.g., Alamo v. Clay*, 137 F.3d 1366, 1368 (D.C. Cir. 1998) (citing *Billiteri v. U.S. Bd. of Parole*, 541 F.2d at 944). Because the findings supporting the decision to revoke were adequately supported and the decision was rationally based, the court concludes that the petitioner was not deprived of due process.

## IV.   CONCLUSION

For the reasons stated above, the court denies the petition for a *writ of habeas corpus*. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of February 2006.

                              RICARDO M. URBINA  
                              United States District Judge